# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY | DOCKET NO. |
| v. | DECLARATORY JUDGMENT |
| SIGNATURE BUILDING SYSTEMS OF PA, LLC, JOHN GLANCY, VICTOR DEPHILLIPS, PAUL MARSALA, GARY MARTIN, CRAIG LANDRI, JAY BRADLEY, PFS CORPORATION, LLC, d/b/a PFS TECO, RICHARD WENNER, HAROLD RAUP, and TONY STEIMLING | CIVIL ACTION |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff Motorists Mutual Insurance Company, by and through its attorneys, Billet &

Associates, LLC, hereby avers the following:

### EXHIBITS

1.      True and correct copies of the following exhibits are incorporated by reference

herein, made a part hereof, and marked as follows:

| | |
|---|---|
| Exhibit "A" | Second Amended Complaint, Christina v. Signature Building Systems of PA, LLC, et al., Superior Court of Massachusetts, Essex County, No. 1877CV00506-D |
| Exhibit "B" | Motorists Mutual Insurance Company policy 8/8/2016 – 8/8/2017 |
| Exhibit "C" | Motorists Mutual reservation of rights letter to Signature Building Systems of PA, LLC, July 10, 2023 |
| Exhibit "D" | Trademark License Agreement between PFS and Signature |

## PARTIES

2.    Plaintiff Motorists Mutual Insurance Company (hereinafter "Motorists"), is an insurance company with its principle place of business at 471 East Broad Street, Columbus, Ohio 43215.

3.    Defendant Signature Building Systems of PA, LLC (hereinafter "Signature"), is a limited liability company with its principal place of business at 1004 Springbrook Avenue, Moosic, Pennsylvania 18507.

4.    Defendant John Glancy ("Glancy") is an adult individual residing in Peabody, County of Essex, Commonwealth of Massachusetts, and at all times material was an account executive and sales representative of the defendant Signature. Exhibit "A" at p. 2, ¶ 4.

5.    Defendant Victor DePhillips ("DePhillips") is an individual residing in South Abington Township, Pennsylvania, and at all times material was employed as the President of Signature. Exhibit "A" at p. 2, ¶ 5.

6.    Defendant Paul Marsala ("Marsala") is an individual residing in Scranton, Pennsylvania, and at all times material was employed as a project supervisor of Signature. Exhibit "A" at p. 2, ¶ 6.

7.    Defendant Gary Martin ("Martin") is an individual residing in Kreamer, Pennsylvania, and at all times material was employed as the service manager of Signature. Exhibit "A" at p. 2, ¶ 7.

8.    Defendant Craig Landri ("Landri") is an individual residing in Tunkhannock, Pennsylvania, and at all times material was employed first as the operations manager and then subsequently as President of Signature. Exhibit "A" at p. 2, ¶ 8.

9.     Defendant Jay Bradley ("Bradley") is an individual residing in Scranton, Pennsylvania, and at all times material was employed first as the sales manager and then subsequently as Vice President of Signature.  Exhibit "A" at p. 2, ¶ 9.

10.     Defendant PFS Corporation, d/b/a PFS TECO ("PFS"), is a Wisconsin corporation with a place of business at 1115 Old Berwick Road, Bloomsburg, Pennsylvania. Exhibit "A" at p. 2, ¶ 10.

11.     Defendant Richard Wenner ("Wenner") is an individual residing in Benton, Pennsylvania, and at all times material was employed as the Vice President of Northeast Region of PFS.

12.     Defendant Harold Raup ("Raup") is an individual residing in Turbotville, Pennsylvania, and at all times material was employed as a plan reviewer of PFS.

13.     Defendant Tony Steimling ("Steimling") is an individual residing in Sunbury, Pennsylvania, and at all times material was employed as an inspector of PFS, regularly doing business in the Commonwealth.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this case due to diversity of citizenship pursuant to 28 U.S.C. §1332, as this is an action between citizens or corporations of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15.     Venue lies in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391.

16.     This action is brought under the Federal Declaratory Judgment Act, 28 USC §2201, et seq.

## FACTS AND PROCEDURAL BACKGROUND

### The Underlying Lawsuit

17.     This insurance declaratory judgment action arises out of claims of faulty construction of a modular house in Danvers, Massachusetts.  See Exhibit "A."

18.     William and Catherine Christina allege that they entered into a contract with Modular America Construction Corporation (hereinafter "MACC") to build them a modular home at 17 Bridle Spur Road, Danvers, Massachusetts.  Id.

19.     The modular units were to be manufactured and delivered to the jobsite by Signature, based on plans and specifications prepared by Signature and MACC, which the Christinas claim were defective.  Id.

20.     It is alleged that Signature and MACC submitted the plans to the Massachusetts Board of Building Regulations and Standard ("BBRS"), knowing they were defective.  Id., at p. 5, ¶ 25.

21.     Representations were made that the plans and specifications would be corrected, but it is alleged that Signature proceeded with manufacturing the modular units without corrections being made, and that MACC lied, saying the corrections would be made, when they were not.  Id., at p. 7, ¶¶ 41-46.

22.     The Christinas allege that Signature and MACC fraudulently concealed the status of the manufacturing process from the Christinas, including that the defective modular units had already been manufactured.  Id., at p. 8, ¶¶ 53-54.

23.     The Christinas fired MACC, and allege that they entered into an agreement with Signature to manufacture new modular units for the same price, with plans that met the required specifications.  Id., at p. 6, ¶ 35.

4

24.     Due to delays, Signature failed to meet deadlines for completion in 2015 and

2016, so the Christinas hired a new builder, Summit Modular Builders, but allege that Signature

continued to have delays, falsely blaming third-party vendors. Id., at p. 10, ¶¶ 63-67.

25.     Finally, the new plans were accepted by the BBRS, but, while Signature hired

PFS Corporation -- a third-party inspection agency -- to review the plans, the Christinas allege

that the plans were never properly reviewed and resulted in code violations, deficiencies,

omissions, and design and calculation errors. Id., at pp. 10-11, ¶¶ 69-71.  Nonetheless, Signature

manufactured the new modular units.

26.     The Christinas allege that Signature subcontracted with Advanced Modular

Concepts, LLC ("AMC"), to install the modular units and that AMC was not qualified or

licensed to perform the installation. Id., at pp. 13-14, ¶¶ 89-93.

27.     The Christinas also allege that, on the eve of delivery, Signature coerced more

money from them, but failing to produce receipts showing increased costs. Id., p. 14, ¶ 95.

28.     The Christinas allege that the modular units were delivered to the property on

August 9, 2016, with damage to their protective wrap in transit, as well as missing and/or

erroneous and damaged parts (e.g., doors, window, transoms).  Signature promised to repair and

correct all deficiencies, including water damage. Id., at p. 14, ¶ 95.

29.     The Christinas' Second Amended Complaint asserts a myriad of deficiencies and

omissions in the modular units.  Specifically, the Christinas allege:

> ...failure to connect, bolt and support the modules as specified by the plans;
> failure to install tie-down anchors for wind and seismic loading for connecting
> the structure to foundation; failure to connect attic center beam and install
> straps across center wall per plans; failure to install knee wall connectors per
> plans; failure to install fasteners according to the fastening schedule; failure to
> connect gusset plates at base of trusses securing the rafters to the ceiling joist
> as specified; misaligned, improperly fastened and/or failed to install roof
> straps; failure to properly install collar tie connections; failure to install steel

straps over peak of roofs; failure to properly install ice and water shield in between modular units; failure to install metal hangers per plans and basement column detail; failure to properly install and/or completely failing to install sheathing at the mating connections of the modular units; failure to properly install the roofs; failure to properly install the panelized garage; failure to install modular and panelized sections causing unacceptable excessive gaps/openings, overhangs and protrusions of modular units. These deficiencies caused extensive damage, lack of lateral rigidity and structural support for lateral loads and structural deficiencies and issues throughout the Christinas' Home. These and other serious structural deficiencies have rendered the Christinas' Home unsafe for habitation, with parts of it subject to collapse and would require substantial repairs, corrective action and/or complete demolition and reconstruction. These deficiencies were fraudulently concealed by Signature, Marsala, and AMC.

On or about August 23, 2016, with the first rain since the Signature/AMC installation of the Christinas' Home, there was extensive water infiltration, including but not limited to the roof causing substantial damage to the insulation installed in the attic and second floor ceilings; the sunroom and main house mating wall connection that experienced significant water infiltration extending down to the basement; water damage to the windows and floors on the right side of the house on both floors; and water damage to the kitchen/breakfast nook patio slider door and wall.

Id., at p. 16, ¶¶ 111-112.

30.     According to the Christinas, Signature attempted to correct the defects, but failed to do so. Id., at p. 16, ¶ 113.

31.     The Christinas further allege that both town and state officials inspected the property and required that Signature take corrective action. Id., at p. 17, ¶¶ 117-121.

32.     Based on these alleged facts, the Christinas have pleaded causes of action for: (1) Breach of Contract; (2) Negligence; (3) Negligent Misrepresentation; (4) Negligent Infliction of Emotional Distress; (5) Intentional Infliction of Emotional Distress; (6) Fraud; (7) Breach of Warranty; (8) Breach of the Implied Warranty of Fitness for a Particular Purpose; (9) Breach of the Implied Warranty of Merchantability; (10) Civil Conspiracy; and (11) violations of Massachusetts's Consumer Protection Act, Massachusetts General Laws, Chapter 93A.

**Signature's Insurance with Motorists Mutual Insurance Company**

33.    Motorists issued policy no. 33.293912-90E to Signature for the policy period

8/8/2016 – 8/8/2017.  See Exhibit "B."

34.    Commercial General Liability Coverage Form CG 0001 (12-07) states in part:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring agreement**

a.  We will pay..."bodily injury" or "property damage"...to which this insurance applies.

...

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The..."bodily injury" or "property damage" is caused by an "occurrence"....

Exhibit "B" at p. 123.

35.    An "occurrence" is defined as:

...an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Exhibit "B" at p. 137.

36.    The Commercial General Liability Coverage Form also contains exclusions for

"Damage to Your Product" (exclusion k) and "Damage to Your Work" (exclusion l).

37.    The "Damage to Your Product" exclusion (k) does not provide coverage to:

"Property damage" to "your product" arising out of it or any part of it.

Exhibit "B" at p. 127.

38.    The "Damage to Your Work" exclusion (l) does not provide coverage to:

"Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard."

7

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Exhibit "B" at p. 127.

39.     The Christina Second Amended Complaint asserts claims of faulty workmanship and damages to correct faulty workmanship, none of which is a covered "occurrence" as defined in Motorists' policy.

40.     Coverage to Signature is also excluded under exclusions (k) ("Damage to Your Product") and (l) ("Damage to Your Work").

41.     On July 10, 2023, Motorists sent a reservation of rights letter to Signature, explaining its coverage position, and why defense and indemnity is not owed to Signature for the claims in the Christina Second Amended Complaint.  See Exhibit "C."

## COUNT I

**There is no allegation of an "occurrence" in the Christina Second Amended Complaint that triggers Motorists' duty to defend or indemnify defendants Signature, Glancy, DePhillips, Marsala, Martin, Landri, and Bradley, PFS, Wenner, Raup, or Steimling**

42.     Plaintiff incorporates by reference all preceding allegations and paragraphs of this Declaratory Judgment Complaint, as fully as though herein set forth at length.

43.     Motorists' policy only provides coverage for "property damage" that is caused by an "occurrence."  See Exhibit "B" at p. 123.

44.     An "occurrence" is defined as an "accident."  See Exhibit "B" at p. 137.

45.     Under Pennsylvania law, "faulty workmanship does not constitute an "accident" as required to set forth an occurrence under...CGL policies."  Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 336 (2006).

46.     The Christina Second Amended Complaint asserts claims of "faulty workmanship," including, but not limited to, the allegation that the modular components were defective. See Exhibit "A."

47.     Faulty workmanship is not an "accident," and not a covered claim under Motorists' policy. Kvaerner, supra.

48.     Accordingly, coverage does not apply under the coverage grant of Motorists' policy as it is an occurrence policy, and as the Pennsylvania Supreme Court has found that faulty workmanship is not an "accident," not an "occurrence," and therefore not covered.

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its favor as set forth in Count IX, infra.

## COUNT II

### The "Damage to Your Product" exclusion precludes
### coverage for the claims in the Christina Second Amended Complaint

49.     Plaintiff incorporates by reference all preceding allegations and paragraphs of this Declaratory Judgment Complaint, as fully as though herein set forth at length.

50.     The "Damage to Your Product" exclusion in the Motorists policy (exclusion k) does not provide coverage for:

"Property damage" to "your product" arising out of it or any part of it.
See Exhibit "B" at p. 127.

51.     "Property damage" is defined in part as "physical injury to tangible property, including all resulting loss of use of that property." See Exhibit "B" at p. 137.

52.     "Your product" is defined in part as "any good or products, other than real property, manufactured, sold, handled, distributed or disposed of by (a) you; (b) others trading

under your name; or (c) a person or organization whose business or assets you have acquired." Id., at p. 138.

53.    Exclusion (k) applies, as the <u>Christina</u> Second Amended Complaint asserts claims for faulty workmanship, which is defined as "'property damage' to 'your product arising' out of it."

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its favor as set forth in Count IX, infra.

## COUNT III

### The "Damage to Your Work" exclusion precludes
### coverage for the claims in the Christina Second Amended Complaint

54.    Plaintiff incorporates by reference all preceding allegations and paragraphs of this Declaratory Judgment Complaint, as fully as though herein set forth at length.

55.    The "Damage to Your Work" exclusion (l) does not provide coverage to:

"Property damage" to "your work" arising out of it or any part of it including in the "products-completed operations hazard."

This exclusion does not apply if the damage work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Exhibit "B" at p. 127.

56.    "Your work" means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

Exhibit "B" at p. 138.

57.    The "Products-completed operations hazard":

a.   Includes all... "property damage" occurring away from your premises...arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a) When all the work called for in your contract has been completed.

    ...

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, by which is otherwise complete, will be treated as completed.

Exhibit "B" p. 137.

58.    There is no allegation in the Christina Second Amended Complaint that Signature's liability arises out of the acts of any subcontractor, as all claims of liability against Signature are for Signature's own independent acts of faulty workmanship, intentional acts, or other acts or omissions, and/or for acts in conjunction with, or in conspiracy with, other defendants in the Christina case.

59.    Exclusion (l) applies to preclude coverage as the Christina Second Amended Complaint asserts claims for faulty workmanship, which is defined as "property damage" to "your work" in the "products completed operations hazard."

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its favor as set forth in Count IX, infra.

## COUNT IV

### Claims for breach of breach of contract and breach of warranty are not covered under Motorists' policy

60.     Plaintiff incorporates by reference all preceding allegations and paragraphs of this

Declaratory Judgment Complaint, as fully as though herein set forth at length.

61.     In the Second Amended Complaint, with regard to Signature and its employees

Glancy, DePhillips, Marsala, Martin, Landri, and Bradley, and with regard to PFS and its

employees Wenner, Raup, and Steimling, the Christinas assert claims of breach of contract

(Count I; Signature, DePhillips); breach of warranty (Count VII; Signature, DePhillips, Marsala,

Martin, Landri, Bradley; PFS, Wenner, Raup, Steimling); breach of implied warrant of fitness for

a particular purpose (Count VIII; Signature, DePhillips, Marsala, Martin, Landri, Bradley; PFS,

Wenner, Raup, Steimling); and breach of implied warranty of merchantability (Count IX;

Signature). See Exhibit "A" at pp. 29, 35, 36, 37.

62.     Pennsylvania law does not recognize the applicability of a general liability policy

to breach of contract and breach of warranty claims as "these are disputes between parties to a

contractual undertaking, not accidental injuries." Freestone v. New England Log Homes, Inc.,

2003 PA Super 24, ¶ 14 (2003), appeal denied 577 Pa. 721 (2003). Here, Motorists' policy

issued to Signature includes a standard commercial general liability coverage form under which

breaches of contract and warranties are not a covered "occurrence" as they are not an "accident."

See Exhibit "B" at p. 117, et seq., 137.

63.     The purpose and intent of a general liability insurance policy is to protect the

insured from liability for accidental injury to the person or property of another rather than

coverage for disputes between parties to a contractual undertaking.  Redevelopment Auth. of

<u>Cambria County v. Int'l Ins. Co.</u>, 454 Pa. Super. 374 (1996), *appeal denied* 548 Pa. 649 (1997); <u>Freestone</u> at ¶ 14.

64.     Motorists has no duty to defend or indemnify Signature, PFS, or their respective employees, for breach of warranty and breach of contract claims asserted in the underlying action, as these counts fail to allege an "occurrence" caused by an "accident" as defined by Motorists' policy.  <u>See</u> Exhibit "B" at Commercial General Liability Coverage Form, p. 137, <u>et seq.</u>  See also <u>Redevelopment Auth. of Cambria County</u>, supra; <u>Freestone</u>, supra.

65.     Accordingly, coverage does not apply to Count I (Signature, DePhillips) breach of warranty; Count VII (Signature, DePhillips, Marsala, Martin, Landri, Bradley; PFS, Wenner, Raup, Steimling) breach of implied warrant of fitness for a particular purpose; Count VIII (Signature, DePhillips, Marsala, Martin, Landri, Bradley; PFS, Wenner, Raup, Steimling); and breach of implied warranty of merchantability, Count IX (Signature) of the <u>Christina</u> Second Amended Complaint, and for the Christinas' claims of breach of contract and breach of warranty. <u>See</u> Exhibit "A" at pp. 29, 35, 36, 37.

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its favor as set forth in Count IX, <u>infra</u>.

## **COUNT V**

### **The Christinas' claims of negligence against Signature and its employees are not covered under Motorists' policy**

66.     Plaintiff incorporates by reference all preceding allegations and paragraphs of this Declaratory Judgment Complaint, as fully as though herein set forth at length.

67.     With regard to Signature and its employees Glancy, DePhillips, Marsala, Martin, Landri, and Bradley, in their Second Amended Complaint, at Count II (negligence; Glancy, DePhillips, Marsala, Martin, Landri, Bradley); Count III (negligent misrepresentation; Glancy,

DePhillips, Marsala, Martin, Landri, Bradley); and Count IV (negligent infliction of emotional distress; Glancy, DePhillips, Marsala, Martin, Landri, Bradley), the Christinas allege negligence and negligent misrepresentation in, inter alia, providing services and products, and in design, manufacture, installation, deficiencies, and delay with regard to the modular home that caused damages. Exhibit "A" at pp. 29-31.

68.     In Counts II (negligence), III (negligent misrepresentation) and IV (negligent infliction of emotional distress), the Christinas repeat the same allegations that they claim were breach of contract on the part of Signature (Count I), but characterize them as "negligence." Exhibit "A" at pp. 29-31.

69.     The claims of negligence are not claims for an "occurrence," as the "gist of the action" -- the alleged acts which the Christinas allege caused harm -- arose out of contract, not tort, since the relationship between the Christinas and Signature (and therefore Signature's employees) was in contract.  See Erie Ins. Exch. v. Abbott Furnace Co., 2009 PA Super 88, ¶ 11 (2009), appeal denied 604 Pa. 706 (2009); Redevelopment Auth. of Cambria County v. Int'l Ins. Co., supra.

70.     Accordingly, coverage does not apply to Count II (negligence; Glancy, DePhillips, Marsala, Martin, Landri, Bradley), Count III (negligent misrepresentation; Glancy, DePhillips, Marsala, Martin, Landri, Bradley), and Count IV (negligent infliction of emotional distress; Glancy, DePhillips, Marsala, Martin, Landri, Bradley), as the gist of the action is in tort, not contract.  Therefore, no "occurrence" has been alleged under Motorists' insurance policy.

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its favor as set forth in Count IX, infra.

## COUNT VI

### The Christinas' claims of negligence against PFS and its employees are not covered under Motorists' policy

71.     Plaintiff incorporates by reference all preceding allegations and paragraphs of this Declaratory Judgment Complaint, as fully as though herein set forth at length.

72.     With regard to PFS and its employees Wenner, Raup, and Steimling, in their Second Amended Complaint, at Count II (negligence); Count III (negligent misrepresentation), and Count IV (negligent infliction of emotional distress), the Christinas allege negligence in, inter alia, providing services and products, and in approval and certification of elements of the Home, approvals of plans, specifications, and engineering, and whether modular units were completed and were in compliance with, the plans, specifications, terms of their agreement, and in a good and workmanlike manner.  Exhibit "A" at pp. 29-31.

73.     The facts pled in the Christina Second Amended Complaint against PFS and its employees Wenner, Raup, and Steimling (Exhibit "A") are as follows:

71.     Raup was the plan reviewer employed by PFS responsible to review and approve Signature's manufacture of the Christinas' Home. PFS and Raup failed to properly review the Christinas' Plans, resulting in code violations, deficiencies, omissions, design and calculation errors and resulting structural issues. (p. 11)

75.     Steimling failed to perform his duties as required pursuant to the Special Regulations. (p. 11)

76.     Despite Steimling's opportunity and obligation to fully inspect the modular units for defects, omissions, deviations from the plans and specifications in their manufacturing in accordance with the approved building system, and for any non-code compliant construction, Steimling failed to identify and address extensive deficiencies, safety and fire hazards built into the Christinas' modular units. (p. 11)

77.     Steimling was not knowledgeable of Massachusetts building codes, rules and regulations, and he made no inquiry of Signature's adherence to its Compliance Assurance Program and the plan requirements

15

relative to the Christinas' Home. Despite this, Steimling falsely represented on labels affixed to the modular units of the Christinas' Home that they were properly inspected, acceptable and manufactured according to the approved building system plans and all applicable codes, rules and regulations.  (p. 12)

80. Signature and PFS did not perform their responsibilities and did not follow the mandated Compliance Assurance Program nor implement their required checks and balances to insure proper manufacturing, code compliance, quality control inspections and necessary service corrective action at every level from production worker to plant manager, quality control supervisor and quality control inspector.  (p. 12)

81. PFS also permitted Signature to manufacture the Christinas' Home before PFS and its plan reviewer Raup even reviewed, approved and submitted the plans to the BBRS certifying compliance of the Christinas' building system with the codes, rules and regulations of the Commonwealth of Massachusetts' Manufactured Building Program.  (p. 12)

83. On or about August 5, 2016, certification labels that by law were to be issued and affixed by PFS only after a thorough inspection were improperly affixed to each modular unit by Signature, falsely certifying the sound, safe and code compliant manufacture of the Christinas' modular units. This occurred because, among other things, PFS had an agreement with Signature that for a small fee PFS would, in essence, "sell" labels to Signature for Signature to affix and PFS would make no meaningful inspection whatsoever. PFS would simply accept Signature's own in-process control inspection reports as accurate without its own independent inspection and verification. PFS attempted to protect itself from this practice by obtaining an indemnity agreement from Signature for any claim or loss arising from faulty construction, inspections and certifications.  (p. 13)

84. The agreement between PFS and Signature whereby PFS effectively delegated its TPIA responsibilities to Signature, the entity PFS as the TPIA was obligated to inspect and monitor, was a violation of PFS's obligations and responsibilities under Massachusetts law as a licensed TPIA.  (p. 13)

87. PFS knew or should have known that its failure to properly and fully inspect Signature's modular units and ensure proper compliance with Massachusetts State building codes, rules and regulations and its approved Compliance Assurance Program would result in the sale of a defective, non-code compliant and unsafe manufactured home to the

Christinas as unsuspecting purchasers and homeowners reasonably relying on the TPIA's inspections and certifications. (p. 13)

88. Signature and PFS acted in concert to recklessly fail to perform required inspections and quality control evaluations and falsify certifications of the Christinas' Home. (p. 13)

100. One day after the August 9 arrival of the Home at the subject property, Steimling falsified a PFS quality control inspection record on August 10, 2016 indicating that he reviewed and inspected the modular units and, on that day, signed the Massachusetts certification form and assigned for attachment the certification labels of the Christinas' Home at Signature's Pennsylvania plant. (p. 15)

101. Steimling failed to properly inspect the Christinas' modular units, falsely certified said units and improperly permitted someone on August 5, 2016 to affix both the certification labels and PFS' s data plate labels. (p. 15)

148. On or about late November, PFS and Wenner were notified of the additional defects found and damage uncovered at the Christinas' Home and were provided photographic evidence of deficiencies and damage. Signature and PFS inspection records were also requested by DPS. At this point, not only should PFS have known, but did know, of the widespread deficiencies and non-code compliant manufacturing by Signature of the Christinas' Home; instead of addressing these manufacturing deficiencies in its role as TPIA and mandating corrective action by Signature, PFS instead conspired with Signature and others to avoid and ignore their responsibilities. (p. 22)

151. On or about late December 2016, the Director of Code Administration and the Manufactured Building Program, Felix Zemel, informed Raup of his investigation into the Christinas' Home and that problems existed related to incomplete plans, specifications and calculations, design documents for the NFPA 13D sprinkler system, sprinkler system pump and tank calculations, truss and shear wall designs, and deficient construction and installation. Mr. Zemel also stated that documents Signature and PFS submitted did not comply with 780 CMR and continued to request additional documentation in an ongoing investigation. (p. 22)

152. PFS was on notice of the widespread and significant deficiencies in the Home with PFS 's false certifications that the modular units were "manufactured in accordance with an approved building system and compliance assurance program approved by the Commonwealth of Massachusetts as being manufactured in accordance with all applicable

codes and rules and regulations of the Commonwealth of Massachusetts" and had an obligation to and failed to re-inspect the Christinas' modular units again and address necessary corrective action. (p. 22-23)

156. Both Signature and PFS have specific knowledge of widespread life-safety defects in the Home, including but not limited to a lack of fire-stopping, draft-stopping and a properly installed vapor barrier as required by Massachusetts State Building Code, and excessive flammable adhesive foam, all of which can only be corrected by full-scale removal of the sheetrock on every exterior wall, as well as pulling down ceilings and pulling up floors, of the Christinas' Home. Indeed, Signature, with PFS's approval, intentionally manufactured the modular units with those defects knowing what corrective action was necessary if discovered, as well as the extreme project delays, wide-scale demolition and egregious hardship and stress the Christinas would suffer. (p. 23)

157. Signature built the Christina's Home, and PFS permitted Signature to build it, knowing of the life-safety defects, including flammable adhesive spray foam. (p. 23)

159. DePhillips and others at Signature, Wenner and Raup and others at PFS all knew and/or should have known of the fire safety hazards of the excessive application of the flammable adhesive foam used to attach ceilings and walls in the Christinas' Home and the necessary extensive demolition of finished walls and ceilings to effectuate its removal. They had a duty to warn the Christinas of the fire and safety hazards this excessive flammable adhesive foam posed to their house and property, themselves and any occupants in their Home, but failed to warn the Christinas of such risks, dangers and life-threatening hazards. (p. 24)

160. DePhillips and others at Signature, and Wenner, Raup and others at PFS also knew or should have known that the application of the adhesive foam to attach sheetrock to the wall framing in the Christinas' modular units prevented Signature's installation of a vapor barrier as specified in the Christinas' plans and required by Massachusetts State Building Codes. A vapor barrier cannot be used between the adhesive and the substrate framing. Signature intentionally chose not to install approved plan and building code required vapor barriers throughout the Christinas' Home, and concealed said deficiency and omission, and PFS permitted Signature to do so. (p.24)

163. Despite PFS and Wenner's representations to the BBRS regarding Signature's future adherence to the Specific Regulations, Wenner and

18

others at PFS knew and/or should have known Signature would continue with such defective construction practices, deficiencies, and violations of Massachusetts State Building codes, rules and regulations up to the time Signature manufactured the Christinas' Home and omitted vapor barriers, fire-stopping and draft-stopping and installed excessive flammable adhesive foam. (p. 24)

164.  PFS's third party inspection practices and oversight of Signature's manufacturing in accordance with its Compliance Assurance Program did not change following the Chasse matter to effectively address Signature's history of defective, non-code compliant manufacturing practices. (p. 25)

167.  Despite knowledge by Wenner and others at PFS of the history of Signature's improper, non-code compliant manufacturing practices, PFS failed to properly inspect modular buildings manufactured by Signature for such continued practices, failed to identify necessary corrective action to be executed by Signature and failed to comply with regulations governing its own responsibilities pursuant to its TPIA license issued by the BBRS to ensure Signature's adherence to its Compliance Assurance Program, the Special Regulations and all applicable codes, rules and regulations of the Commonwealth of Massachusetts. (p. 25)

168.  PFS took no action to address Signature's failure to comply with its QAM and 780 CMR 110.R3 in the manufacturing of the Christinas' Home. PFS took no action to address its own failures to comply with its TPIA duties, including adequately monitoring Signature's adherence with its Compliance Assurance Program, and responsibilities to the Commonwealth of Massachusetts and homeowners being sold Signature manufactured buildings. (p. 25)

169.  As a TPIA licensed by the Commonwealth of Massachusetts, PFS must be free of conflicts of interest with any manufacturer it is licensed to perform inspections and certifications. PFS has violated its duty to be free of conflicts by routinely entering into indemnity and trademark licensing agreements with the manufacturers that retain its services. (p. 25)

170.  AMC, Brockway and others at AMC, DePhillips and others at Signature, Wenner and others at PFS voluntarily participated and assisted each other in a common scheme and plan to fraudulently conceal known defects, omissions and dangerous conditions in the Christinas' Home. (p. 26)

171. Signature has failed to perform all corrective action required to effectuate the mandated conformance of the Christinas' Home to the Massachusetts State Building Codes and Special Regulations and all other applicable Codes and Rules and Regulations, including but not limited to executing every aspect of its Compliance Assurance Program, and PFS permitted it to do so.  (p. 26)

172. The Christinas were also forced to purchase materials and hire contractors to address numerous repairs and issues to minimize additional damages as described herein by the defendants given the unreasonable delays of Signature, PFS and AMC to provide corrective action.  Although Signature agreed to reimburse the Christinas for materials and repairs, it has failed to do so.  (p. 26)

74. All of the allegations against PFS and its employees Wenner, Raup, and Steimling in the <u>Christina</u> Second Amended Complaint, <u>supra</u>, at ¶ 73, are for their own independent acts of negligence, intentional acts, or other acts or omissions, and/or for acts in conjunction with, or in conspiracy with, Signature.

75. None of the allegations against PFS and its employees Wenner, Raup, and Steimling in the <u>Christina</u> Second Amended Complaint, <u>supra</u>, at ¶ 73, are for liability of PFS or its employees arising out the acts of Signature.

76. Upon information and belief, the agreement between PFS and Signature that applies to the design and construction of the Christina home is the Trademark License Agreement between PFS and Signature entered into on February 15, 2015.  <u>See</u> Exhibit "D."

77. Under the Trademark License Agreement between PFS and Signature, Signature is to indemnify and defend PFS and its officers and employees for liability arising out of Signature's acts or omissions.  <u>See</u> Exhibit "D" at p. 2, ¶ 5 and attachment "Pennsylvania Implementing Contract at p. 3 ("Clarification of Indemnity").

78. Nothing in the Trademark License Agreement between PFS and Signature, requires Signature to indemnify and defend PFS and its officers and employees for their own acts

or omissions.  See Exhibit "D" at p. 2, ¶ 5 and attachment "Pennsylvania Implementing Contract at p. 3 ("Clarification of Indemnity").

79.     Nothing in the Trademark License Agreement between PFS and Signature, requires Signature to make PFS or its officers and employees additional insureds under any insurance maintained by Signature.  See Exhibit "D."

80.     Under Motorists' policy, contractual liability coverage -- insuring Signature's indemnity obligations -- only applies to "insured contracts" under which Signature:

> ...assume(s) the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Exhibit "B" at Commercial General Liability Form CG 0001 (12-07), p. 2, § 1 (Coverage), No. 2 (Exclusions), subpart (b) (Contractual Liability) and p. 13-14, § V (Definitions), No. 9 (definition of "insured contract").

81.     Contractual liability coverage under Motorists' policy does not apply to insure Signature's indemnity obligation to PFS and its officers and employees under the Trademark License Agreement (Exhibit "D"), as the Trademark License Agreement is not an "insured" contract," as the tort liability of PFS and its officers and employees would not be imposed absent the contract(s) and/or agreement(s) under which PFS provided services for the design and construction of the Christina's home.

82.     Accordingly, the Motorists' policy does not insure Signature's indemnity obligation to PFS and its officers and employees under the Trademark License Agreement (Exhibit "D").

83.     Moreover, while the Trademark License Agreement (Exhibit "D"), requires Signature to indemnify PFS and its officers and employees for liability arising out of Signature's

acts or omissions, nothing in the <u>Christina</u> Second Amended Complaint alleges liability of PFS

or its officers and employees that arises out of Signature's acts or omissions. <u>See</u> ¶ 73, <u>supra</u>.

All of the allegations in the Second Amended Complaint against PFS and its employees Wenner,

Raup, and Steimling in the <u>Christina</u> Second Amended Complaint, <u>supra</u>, at ¶ 73, are for their

own independent acts of negligence, intentional acts, or other acts or omissions, and/or for acts in

conjunction with, or in conspiracy with, Signature, but not arising out of the acts or omissions of

Signature, <u>id</u>.

      84.    Accordingly, contractual liability coverage under Motorists' policy does not

apply.

      85.    Motorists policy only provides additional insured coverage when required in a

written contract.  As stated in Endorsement CG 7037 (10-06):

> **Additional Insured Contractors - Automatic Status When Required In Written Contract With You**
>
> **THIS ENDORSEMENT CHANGES THE POLICY.
> PLEASE READ IT CAREFULLY.**
>
> **This endorsement modifies insurance provided under the following:**
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> **A. Section II - Who Is An Insured** is amended to include as an additional
> insured any person or organization when you and such person or
> organization have agreed in a written contract that such person or
> organization be added as an additional insured on your policy.

Exhibit "B."

      86.    As the Trademark License Agreement between PFS and Signature (Exhibit "D"),

does not require or mention additional insured coverage or Signature making PFS or its officers

or employees additional insureds on any insurance policy, additional insured coverage does not

apply under Motorists' policy.

87.    As neither contractual liability coverage nor additional insured coverage apply, no coverage applies to PFS or its officers or employees, including Wenner, Raup, and Steimling, in the <u>Christina</u> case under the Motorists policy.

**COUNT VII**

**Claims of intentional conduct, civil conspiracy, fraud, and**
**Chapter 93A are not covered under Motorists Policy**

88.    Plaintiff incorporates by reference all preceding allegations and paragraphs of this Declaratory Judgment Complaint, as fully as though herein set forth at length.

89.    In their Second Amended Complaint, the Christinas allege the following:

| | |
|---|---|
| Count V | Intentional infliction of emotional distress (Signature, Glancy, DePhillips, Marsala, Martin, Landri, Bradley; PFS, Wenner, Raup, Steimling); |
| Count VI | Fraud (Signature, Glancy, DePhillips, Marsala, Martin, Landri, Bradley; PFS, Steimling); |
| Count X | Civil Conspiracy (Signature, Glancy, DePhillips, Marsala, Martin, Landri, Bradley; PFS, Wenner, Raup, Steimling); |
| Count XI | Chapter 93A (Signature, Glancy, DePhillips, Marsala, Martin, Landri, Bradley; PFS, Wenner, Raup, Steimling). |

Exhibit "A" at pp. 32, 33, 38, 40.

90.    Motorists' policy only provides coverage for "bodily injury" and "property damage" that is caused by an "occurrence." <u>See</u> Exhibit "B" at p. 123.

91.    An "occurrence" is defined as an "accident." <u>See</u> <u>Id.</u>, at p. 137.

92.    Moreover, the Motorists' policy specifically excludes coverage for "bodily injury" and "property damage" from "expected or intended injury from the standpoint of the insured." <u>See</u> <u>Id.</u>, at p. 124.

93.     It is well-settled under Pennsylvania law that intentional torts are not "accidents." State Farm Mut. Auto. Ins. Co. v. Martin, 442 Pa. Super. 442, 444 (1995) *appeal denied* 544 Pa. 676 (1996).  Accordingly, insurers owe neither a duty to indemnify nor a duty to defend claims for intentional torts.  Id.  Likewise, under Pennsylvania law, intentional liability policies that purport to insure against intentional torts are against public policy.  Id., at 445.

94.     Accordingly, coverage does not apply to Signature and its employees Glancy, DePhillips, Marsala, Martin, Landri, and Bradley, or PFS and its employees Wenner, Raup, and Steimling, for the Christinas' claims of intentional conduct, Counts V, VI, X, and XI, as intentional acts are not an accident, and therefore not a covered "occurrence" under Motorists' policy.

95.     In Counts VI and XI, the Christinas' allege common law fraud, as well as consumer fraud under Massachusetts General Laws Chapter 93A.  The Massachusetts Supreme Court has held that the elements of fraud are as follows:

> The elements of fraud consist of "[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage." Danca v. Taunton Sav. Bank, 385 Mass. 1, 8, 429 N.E.2d 1129 (1982), quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152, 190 N.E.2d 867 (1963).

Balles v. Babcock Power, Inc., 476 Mass. 565, 573-574 (2017).

96.     As fraud is an intentional act, it is not an accident and not a covered "occurrence," so that coverage does not apply under Motorists' policy to Counts VIII and XVII of the Second Amended Complaint.  See Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs' Asso. Ins. Co., 512 Pa. 420, 517 A.2d 910 (1986) (intentional acts are not a covered "occurrence").

97.     Consumer fraud (Count XI; Chapter 93A), like other fraud, is based on unfair and deceptive practices.  Under Pennsylvania law, consumer fraud is, again, not an accident, and not

a covered occurrence. <u>Berkley Specialty Ins. Co. v. Masterforce Construction Corp.,</u> 515 F.

Supp. 3d 285, 297 (M.D. Pa. 2021).

98.     The elements of civil conspiracy are: (1) a combination of two or more persons

acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or

for an unlawful purpose; (2) an overt act done in pursuance of a common purpose; and (3) actual

legal damage. <u>Strickland v. University of Scranton,</u> 700 A.2d 979, 987-988 (Pa. Super. 1997).

To prove a conspiracy, Pennsylvania courts have required proof of malice or an intent to injure.

<u>Id.</u> Accordingly, civil conspiracy is not an accident, and therefore not a covered "occurrence"

under Motorists' policy.

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its

favor as set forth in Count IX, <u>infra</u>.

## COUNT VIII

### Claims of punitive/treble damages are
### not covered under Motorists' policy

99.     Plaintiff incorporates by reference all preceding allegations and paragraphs of this

Declaratory Judgment Complaint, as fully as though herein set forth at length.

100.     The <u>Christina</u> Second Amended Complaint includes claims for multiple (up to

treble) damages, attorneys' fees, costs, and interest on the statutory consumer fraud claim,

Massachusetts General Laws, Chapter 93A . <u>See</u> Exhibit "A" at p. 40-43.

101.     Under Massachusetts law, treble damages are punitive. <u>Rosnov v. Molloy,</u> 460

Mass. 474 (2011).

102.     Section 908(1) of the Restatement (Second) of Torts states that:

"Punitive damages" are damages, other than compensation or nominal
damages, awarded against the person to punish him for his outrageous
conduct.

103.    Comment (b)2 of § 908(1) states that "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others."  Restatement (Second) of Torts § 908(1), comment b.

104.    The Supreme Court of Pennsylvania, in Rizzo v. Haines, 520 Pa. 484 (1989), held that Pennsylvania has adopted § 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages.  This section states:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.

Restatement (Second) of Torts § 908(2).

105.    Punitive damages are not insurable in Pennsylvania in light of the extreme conduct required, and since their purpose is to deter future conduct, which can only be achieved if the defendant is punished financially.  See Martin v. Johns-Manville Corp., 508 Pa. 154 (1985); Esmond v. Liscio, 209 Pa. Super. 200 (1967).  Accordingly, it is against public policy to insure punitive damages.  Esmond, supra.

106.    Moreover, under the Motorists' policy, conduct giving rise to punitive damages is not "accidental" and therefore not an insured "occurrence."  See Exhibit "B" at p. 137.

107.    Accordingly, coverage does not apply under Motorists' policy to Signature and its employees, or to PFS and its employees, for punitive, exemplary, and multiple/treble damages, as well as related claims for attorneys' fees and costs of litigation.

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its favor as set forth in Count IX, infra.

## COUNT IX

108.    Plaintiff incorporates by reference all preceding allegations and paragraphs of this Declaratory Judgment Complaint, as fully as though herein set forth at length.

WHEREFORE, plaintiff Motorists Mutual Insurance Company demands judgment in its favor and against the defendant Signature and its employees, and defendant PFS and its employees, declaring, as a matter of law, that:

A.    Plaintiff Motorists Mutual Insurance Company has no duty to insure, indemnify, or defend defendant Signature Building Systems of PA, LLC, and its employees defendants John Glancy, Victor DePhillips, Paul Marsala, Gary Martin, Craig Landri, and Jay Bradley, for, or with regard to, any claims, actions, causes of action, lawsuits, crossclaims, or counterclaims, and any and all other claims for damages arising out of the design and construction of a modular house located at 17 Bridle Spur Road, Danvers, Massachusetts, that was built for William and Catherine Christina, and including, but not limited to, any of the claims, causes of action, complaints, crossclaims, and counterclaims contained in the lawsuit Christina v. Signature Building Systems,  Superior Court of Massachusetts, Essex County, No. 1877CV00506-D, and any other claims and causes of action that may have been asserted in that lawsuit; and

B.    Insurance coverage under Motorists Mutual Insurance Company's insurance Policy No. 33.293912-90E, policy period/effective dates February 28, 2016 to February 28, 2017, including all declarations, terms, provisions, amendments, exclusions, exceptions, and endorsements, does not apply to afford insurance coverage or a defense to defendant Signature Building Systems of PA, LLC, and its employees defendants John Glancy, Victor DePhillips, Paul Marsala, Gary Martin, Craig Landri, and Jay Bradley, for, or with regard to, any claims, actions, causes of action, lawsuits, crossclaims, or counterclaims, and any and all other claims

for damages arising out of the design and construction of a modular house located at 17 Bridle

Spur Road, Danvers, Massachusetts, that was built for William and Catherine Christina, and

including, but not limited to, any of the claims, causes of action, complaints, crossclaims, and

counterclaims contained in the lawsuit Christina v. Signature Building Systems, et al., Superior

Court of Massachusetts, Essex County, No. 1877CV00506-D, and any other claims and causes

of action that may have been asserted in that lawsuit.

C.    Plaintiff Motorists Mutual Insurance Company has no duty to insure, indemnify,

or defend defendant PFS Corporation, d/b/a PFS TECO, and its employees defendants Richard

Wenner, Harold Raup, and Tony Steimling, for, or with regard to, any claims, actions, causes of

action, lawsuits, crossclaims, or counterclaims, and any and all other claims for damages arising

out of the design and construction of a modular house located at 17 Bridle Spur Road, Danvers,

Massachusetts, that was built for William and Catherine Christina, and including, but not limited

to, any of the claims, causes of action, complaints, crossclaims, and counterclaims contained in

the lawsuit Christina v. Signature Building Systems, Superior Court of Massachusetts, Essex

County, No. 1877CV00506-D, and any other claims and causes of action that may have been

asserted in that lawsuit; and

D.    Insurance coverage under Motorists Mutual Insurance Company's insurance

Policy No. 33.293912-90E, policy period/effective dates February 28, 2016 to February 28,

2017, including all declarations, terms, provisions, amendments, exclusions, exceptions, and

endorsements, does not apply to afford insurance coverage or a defense to defendant PFS

Corporation, d/b/a PFS TECO, and its employees defendants Richard Wenner, Harold Raup, and

Tony Steimling, for, or with regard to, any claims, actions, causes of action, lawsuits,

crossclaims, or counterclaims, and any and all other claims for damages arising out of the design

28

and construction of a modular house located at 17 Bridle Spur Road, Danvers, Massachusetts,

that was built for William and Catherine Christina, and including, but not limited to, any of the

claims, causes of action, complaints, crossclaims, and counterclaims contained in the lawsuit

Christina v. Signature Building Systems, et al., Superior Court of Massachusetts, Essex County,

No. 1877CV00506-D, and any other claims and causes of action that may have been asserted in

that lawsuit.

BILLET & ASSOCIATES, LLC

By: *Robert Douglas Billet*
ROBERT DOUGLAS BILLET, ESQUIRE
PA Atty ID 38430

2000 Market Street, Suite 2803
Philadelphia, PA  19103-3201
215-496-7500/fax 7505
rbillet@billetlaw.com

Attorney for plaintiff Motorists Mutual
Insurance Company

Date:  November 15, 2023